IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ANGELA DAVENPORT, | : | CIVIL ACTION NO. |
| | : | 1:13-CV-2358-ELR-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| APOLLO  MD/INDEPENDENT | : | |
| PHYSICIAN GROUP, | : | **FINAL   REPORT   AND** |
| | : | **RECOMMENDATION  ON  A** |
| Defendant. | : | **MOTION TO DISMISS** |

Plaintiff Angela Davenport filed the above-styled civil action on July 16, 2013.

She claims that Defendant Apollo MD/Independent Physician Group ("Apollo MD"),

her former employer, failed to protect her against unlawful sexual harassment by a co-

worker, and retaliated against her for complaining about the harassment, in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

She also asserts a claim against Defendant for "constructive discharge."

The action is before the Court on Defendant's Motion to Dismiss Plaintiff's

Second Complaint [36] ("Motion to Dismiss"). For the reasons discussed below, the

undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [36] be

**GRANTED**, and that all of Plaintiff's claims be **DISMISSED** for failure to state a

claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    BACKGROUND

Plaintiff Angela Davenport, who was originally proceeding *pro se*, filed the Complaint [1] initiating this action on July 16, 2013. On January 31, 2014, Plaintiff, while still proceeding *pro se*, filed an Amended Complaint [10]. Thereafter, on April 10, 2014, Plaintiff's counsel filed a Notice of Appearance. *See* Notice of Appearance [23]. On April 28, 2014, Defendant Apollo MD filed a third Motion to Dismiss [28],[1] requesting that the Court dismiss the Amended Complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

In an Order dated November 24, 2014, the undersigned found that "Plaintiff's scant one-page Amended Complaint [10] fails to state a claim for relief under Title VII." *See* Order [34] dated November 24, 2014 at 12. The undersigned further noted that, although the Plaintiff was proceeding *pro se* at the time she filed the Amended Complaint [10], she had obtained counsel since that time. *See id.* at 13-15. For that reason, the undersigned found that the interests of justice required that Plaintiff be permitted to amend the complaint again, and ordered Plaintiff to amend the complaint a second time. *Id.* at 15. Thereafter, on December 16, 2014, Plaintiff filed a Second

---

[1] Defendant filed two previous Motions to Dismiss [6][12] on the grounds of insufficient service of process. Those motions were denied by the Court. *See* Order [29] dated May 8, 2014.

Amended Complaint and Demand for Jury Trial [35] ("Second Amended Complaint"). The following facts are taken from the Plaintiff's Second Amended Complaint [35].

Plaintiff alleges in the Second Amended Complaint that Defendant ApolloMD employs more than fifteen employees at its principal place of business. Sec. Am. Compl. [35] at ¶ 3. She alleges that she is a woman and was employed by ApolloMD from March of 2010 through March 21, 2012. *Id.* at ¶ 10. She claims that, during her employment at ApolloMD, she was sexually harassed by a co-worker, Quentin Stinson, starting in or around August of 2011. *Id.* at ¶ 15. According to Plaintiff, Stinson said to her, "Angela, nice stripper shoes," and "Angela, today you are dressed like the office whore." *Id.* at ¶ 15. Plaintiff claims that, on one occasion, Stinson asked her to come to his desk to look at something, and when she went to his desk, she looked at his computer screen and saw her "current house with [her] husband's truck on the screen." *Id.* at ¶ 15. Stinson said to her, "I know that is your house because that is your husband's truck." *Id.* at ¶ 15. Stinson told her that he used the website Spokeo to look up information about her, because he had heard about it from co-workers. *Id.* at ¶ 15. Plaintiff then told Stinson, "please do not look up anything related to me on the internet and anywhere else." *Id.* at ¶ 15.

Plaintiff alleges that she "repeatedly asked" Stinson to stop "harassing" her. *Id.* at ¶ 15. On one occasion, Plaintiff asked Stinson to stop "harassing" her in front of co-worker, Keisha East, and "Quentin at that time admitted saying these things to me." *Id.* at ¶ 15. Plaintiff also claims that Quentin told her that his wife had said to him that he should be saying things that are "inappropriate" to her, but he continued to "say these things." *Id.* at ¶ 16. Plaintiff alleges that she also informed her supervisor Lisa Murray about the harassment by Stinson, but it did not stop. *Id.* at ¶ 16. Plaintiff showed Murray an email dated November 13, 2011, in which Plaintiff had asked Stinson to stop. *Id.* at ¶ 16. In response, Murray told Plaintiff that "maybe he (Quentin-the offender) had a crush on me." *Id.* at ¶ 16.

Plaintiff claims that she told Murray that she wanted the "harassment to stop," and when Murray asked Plaintiff what she wanted Murray to do about it, Plaintiff responded, "I am not saying fire anyone, but Lisa, I should be able to come to work and not be harassed." *Id.* at ¶ 16. Murray then said that she did not see Stinson "as the type that would do this," and that she "would have to change the tone the department [sic] because she felt that she had made it too comfortable and that people may have felt that this type of behavior was acceptable because she was guilty of it as well." *Id.* at ¶ 16.

Plaintiff further alleges that other co-workers discussed sexual topics in the office. She claims that an unidentified male intern in the department and the director would "freely discuss him getting girls at his college drunk and having sex with them." *Id.* at ¶ 18. On one occasion, "the director and several other employees freely discussed sex with a MILF," and explained what a "MILF" was to other employees who were unfamiliar with the term. *Id.* at ¶ 18. On another occasion, other unidentified employees showed a cell-phone picture of a penis to people in the office, but Plaintiff claims that they "skipped" her because they "knew that I was not interested in seeing it." *Id.* at ¶ 18. On another occasion, the director informed other employees "that she was going home to watch a movie called The One Eyed Monster." *Id.* at ¶ 18. On Monday, the director came back to work and "described the movie and the star of the movie which the director described as a possessed penis from another planet." *Id.* at ¶ 18. According to Plaintiff, she thought that her conversation with Lisa Murray would cause the environment to "change," but instead, "it was a free for all to discuss whatever you wanted to, whenever you wanted to, with whomever you wanted to and however you wanted to." *Id.* at ¶ 19.

Plaintiff claims that the "harassment" by Stinson did not stop, and he began to say "stuff when no one was present." *Id.* at ¶ 20. Plaintiff alleges that, in January or February of 2012, she complained about Stinson to Thea Dillinger, the Human

Resources Director. *Id.* at ¶ 20. Plaintiff provided copies of emails between her and Stinson reflecting statements that she believed were harassing. *Id.* at ¶ 20. Plaintiff told Dillinger that Plaintiff had previously spoken to Murray, but "the harassment was continuing." *Id.* at ¶ 20. Dillinger then told Plaintiff that she should have reported her complaints to Human Resources, and that she would speak to Stinson the next day. *Id.* at ¶ 20. The next day, Dillinger told Plaintiff that she had spoken with Stinson, and he had denied "doing anything and that he and I [Plaintiff] needed to keep some distance between us for a while." *Id.* at ¶ 21.

Plaintiff alleges further that, after she complained to Dillinger about Stinson, she was "whacked" on her "derriere" by a female manager, Kim Larson, when she was bent over getting files out of a file cabinet. *Id.* at ¶ 22. When Plaintiff asked Larson, "did she just whack me on my butt," Larson replied "yes," and said, "it was so big and it was right there in my face, I had to do it." *Id.* at ¶ 22. Plaintiff told Larson, "Kim, that is not acceptable," and Larson responded by laughing and saying "what are you going to do, run to HR." *Id.* at ¶ 22. Plaintiff claims that she "felt violated and humiliated and [she] felt helpless." *Id.* at ¶ 22. She alleges that she did not report this incident to Human Resources because she felt like she was being "targeted," and further, because the "exchanges" between her supervisor Lisa Murray and herself had "become strained," and that Murray "was short and stern when she

6

spoke with me regarding anything and as a result I really tried to avoid interacting with her if I could." *Id.* at ¶ 23. According to Plaintiff, her job was "stressing [her] out," and some mornings, she "sat in the parking lot and cried because I felt helpless." *Id.* at ¶ 24. Plaintiff claims that she began looking for another job and spent her "evenings and weekends at home sending my resume out." *Id.* at ¶ 23.

Plaintiff alleges that, on either March 13 or 14, 2012, the director met with Plaintiff's department and informed the department that Stinson's employment was terminated for reasons unrelated to his alleged harassment of Plaintiff. *Id.* at ¶ 26. On March 16, 2012, Plaintiff's supervisor Murray advised her that her "job was on the line," and that, in order to keep her job, Plaintiff would be moved into Stinson's position, a financial credentialing position she had held earlier in her employment. *Id.* at ¶ 27. Murray told Plaintiff that she "was taking too long to get [her] job done," and that her change in position would be effective on Monday, March 19, 2012. *Id.* at ¶ 27.

Plaintiff alleges that "weeks" prior to that conversation with Murray, she had interviewed with another employer, and had an interview for that position on Monday, March 19, 2012. *Id.* at ¶ 28. Plaintiff informed Murray that she would not be coming into work on Monday, March 19, or Tuesday, March 20, but would return to work on Wednesday, March 21, 2012. *Id.* at ¶ 28. On March 21, 2012, after Plaintiff returned

to work, she returned a telephone call from the other employer and was told that she was being offered the job. *Id.* at ¶ 30. Plaintiff responded that she would accept the job and would be available to start the new job in two weeks. *Id.* at ¶ 30. Plaintiff then began to write her letter of resignation, and stated in the letter that her resignation was effective immediately. *Id.* at ¶ 32.

Plaintiff alleges that, at 12:15 p.m., she left one copy of her resignation letter with the receptionist to give to Dillinger, who at the time was at a company-sponsored health fair. *Id.* at ¶ 32. She then gave another copy of her resignation letter to Murray, along with her keys to the front door and the file cabinet, and her company badge. *Id.* at ¶ 33. She told Murray that her resignation was effective immediately. *Id.* at ¶ 33. Murray responded by telling Plaintiff that if Plaintiff did not give two weeks' notice, that she would not give Plaintiff a reference. *Id.* at ¶ 33. Plaintiff replied that she understood, and Murray "began to yell at [her] in front of the other employees and she advised that she was not happy, in fact that she was angry at this moment." *Id.* at ¶ 33. Plaintiff placed the keys and badge on Murray's desk, and after picking up her personal belongings, left the office. *Id.* at ¶ 34. Afterwards, Plaintiff met a coworker for lunch, and the coworker told her that, after she left the office, Murray told the remaining employees that "she was not giving [Plaintiff] a reference and that if any

of them did that they better hope she never finds out about it or they would have problems." *Id.* at ¶ 35.

Plaintiff alleges that, on March 23, 2012, she received a Separation Notice from ApolloMD, and a Final Compensation Action document indicating that her pay on her final day, March 21, 2012, was docked six hours because she only worked two hours. *Id.* at ¶ 37. Plaintiff contends that she actually worked more than three hours on her final day, from 9:15 a.m. to 12:25 p.m. *Id.* at ¶ 37. Plaintiff alleges that the Final Compensation Action also indicated that she owed the company "-34 hours of PTO," which she claims was incorrect. *Id.* at ¶ 37. Plaintiff alleges that she filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against ApolloMD, and that she received a Notice of Right-to-Sue letter from the EEOC on April 17, 2013. *Id.* at ¶ 11.

After Plaintiff filed the Second Amended Complaint, Defendant filed its fourth Motion to Dismiss [36] on December 29, 2014, requesting that the Court dismiss the Second Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief under any of the Plaintiff's individual counts. Plaintiff has filed a response opposing the Defendant's Motion to Dismiss. *See* Pl. Br. [39].

## II.    DISCUSSION

### A.    *Standard on a Motion to Dismiss*

Defendant has moved to dismiss all of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. *See* FED. R. CIV. P. 12(b)(6). When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But

where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (*quoting* FED. R. CIV. P. 8(a)(2)) (other citations omitted).

Although a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), when a plaintiff has referred to documents in the complaint and such documents are central to the plaintiff's claims, a court may consider those documents as part of the pleadings in the case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

Although Plaintiff failed to attach a copy of the EEOC Charge she filed against Defendant ApolloMD, the Defendant attached a copy of the Plaintiff's EEOC Charge to its second Motion to Dismiss, and the Plaintiff has not challenged the authenticity of that document. *See* Defendant's second Motion to Dismiss, Ex. A [28-1] (Pl. EEOC Charge indicating on its face that it was filed March 26, 2012). When a court is considering a motion to dismiss under Rule 12(b)(6), documents attached to the

motion to dismiss may be considered if the document is both central to the plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*."). "'Undisputed' means that the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276.

Because the EEOC Charge submitted by the Defendant is central to the Plaintiff's claims and is specifically referenced by the Plaintiff in the Second Amended Complaint (*see* Sec. Am. Compl. at ¶ 11), and because the Plaintiff has not challenged the authenticity of that document, it may be considered as part of the pleadings in this case in resolving the Motion to Dismiss. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

B.    *Timeliness of Plaintiff's Second Amended Complaint*

Defendant first argues that the Court should dismiss the Plaintiff's Second Amended Complaint in its entirety because it was untimely filed. As discussed above, in an Order dated November 24, 2014, the undersigned noted that, although the Plaintiff was proceeding *pro se* at the time she filed the Amended Complaint [10], she

12

had obtained counsel since that time. *See* Order [34] dated November 24, 2014 ("November 24 Order"). As a result, the undersigned found that the interests of justice required that Plaintiff be permitted to amend the complaint again, and ordered Plaintiff to amend the complaint a second time, stating as follows:

> In this case, the undersigned finds that Plaintiff should be permitted leave to file an amended Complaint because justice so requires. Accordingly, Plaintiff is **ORDERED** to file a Second Amended Complaint within **twenty-one (21) days** of the entry of this Order.

November 24 Order [34] at 15 (emphasis in original).

Thereafter, on December 16, 2014, Plaintiff filed the Second Amended Complaint [35]. Defendant argues that, because the date of the Order was November 24, 2014, the Plaintiff was required to file the Second Amended Complaint by December 15, 2014. Def. Br. [36-1] at 2. In response, Plaintiff argues that, pursuant to Rule 6 of the Federal Rules of Civil Procedure, she had an additional three days beyond the deadline imposed by the Court, and thus, the deadline for filing the Second Amended Complaint was actually December 18, 2014. Pl. Br. [39] at 5; *see* FED.R.CIV.P. 6(d). For that reason, Plaintiff argues, her Second Amended Complaint, filed on December 16, 2014, was timely filed under the November 24 Order.

In its Reply Brief, Defendant cites several cases holding that the three-day extension provided in Rule 6(d) does not apply when a court orders a party to take

13

some action within a specified time after the entry of an order. *See* Def. Reply Br. [40] at 3-4. The Court agrees with the Defendant that, in this case, the three-day extension of Rule 6(d) did not apply because the November 24 Order did not order Plaintiff to amend the complaint within a "specified time after service," as required for the extension to apply. *See* FED.R.CIV.P. 6(d) ("When a party may or must act *within a specified time after service* and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a).") (emphasis added).

Nevertheless, the Court does not agree with Defendant that the Plaintiff's Second Amended Complaint was untimely filed. Defendant ignores the actual wording of the November 24 Order, which ordered Plaintiff to file a Second Amended Complaint "within twenty-one (21) days of the *entry* of this Order." November 24 Order [34] at 15. The docket reflects that the Clerk entered the November 24 Order on the docket on November 26, 2014. Consequently, the Plaintiff had until December 17, 2014, in which to file her Second Amended Complaint. Thus, the Plaintiff's Second Amended Complaint, which was filed on December 16, 2014, one day before the deadline imposed by the Court, was timely filed.

C.    *Shotgun Pleading*

Defendant next argues that the Plaintiff's entire Second Amended Complaint should be dismissed because it is a "shotgun pleading." Def. Br. [36-1] at 4-6. Defendant argues that it is a "shotgun pleading" because the Plaintiff includes a section titled "Facts" that does not identify which particular facts are intended to support which individual count, and also because Plaintiff states, in support of each individual count, that she "incorporates by reference the allegations contained in paragraphs 1 through 43 as if fully stated herein." *See* Sec. Am. Compl. [35] at ¶¶ 44, 50, 54. Defendant argues further that the Plaintiff's "Facts" section "includes numerous factual allegations regarding various aspects of Plaintiff's former employment with Defendant that are irrelevant to her claims of harassment, retaliation, and constructive discharge." Def. Br. [36-1] at 5.

A shotgun pleading is one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). A shotgun pleading is further defined by "the failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 Fed. App'x. 368, 371 (11th Cir. 2005). As a result,

when a plaintiff presents a shotgun pleading, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. District Bd. of Trs. of Central Fla. Community Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). The Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed]" these shotgun pleadings, *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008), because such pleadings "wreak havoc on the judicial system. *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001).

The Court agrees with Defendant that the Plaintiff's "Facts" section "includes numerous factual allegations regarding various aspects of Plaintiff's former employment with Defendant that are irrelevant to her claims of harassment, retaliation, and constructive discharge." Def. Br. [36-1] at 5. Indeed, there are so many irrelevant "facts" included in the Second Amended Complaint regarding Plaintiff's changing job responsibilities and other immaterial issues that it takes some time to wade through the alleged "facts" in order to uncover the facts that may actually be relevant to Plaintiff's claims. In Plaintiff's response, she contends that her "facts" section "is written in first person by the Plaintiff," and that "Plaintiff's attorney didn't attempt to make any edits in this section. The objective was to display Plaintiff's emotions in its pure form." Pl. Br. [39] at 8. Thus, Plaintiff's counsel essentially concedes that he did not fulfill his responsibility to edit the Plaintiff's "first person"

account of her "emotion" so that the multitude of irrelevant facts were properly excluded and Plaintiff's claims were plainly stated.

Nevertheless, just because the Second Amended Complaint was poorly drafted does not necessarily mean that it should be dismissed as a "shotgun pleading." What matters is whether the Plaintiff has identified the individual claims "with sufficient clarity to enable the defendant to frame a responsive pleading." *See Beckwith*, 146 Fed. App'x. at 371. The Court finds that she has done so in this case, despite the inclusion of a significant number of irrelevant facts. The Plaintiff's specific factual allegations regarding each of her individual claims will be discussed further below.

D.   *Plaintiff's Claims*

In the Plaintiff's Second Amended Complaint, she has asserted three separate counts against Defendant ApolloMD. In Count I, she asserts a claim for "sexual harassment" under Title VII. Sec. Am. Comp. [35] at ¶¶ 44-49. In Count II, she asserts a claim of "retaliation" under Title VII. *Id.* at ¶¶ 50-53. Finally, in Count III, she asserts a claim of "constructive discharge." *Id.* at ¶¶ 54-56.

1.   Sexual Harassment under Title VII

In Count I, Plaintiff asserts a claim for "sexual harassment" under Title VII. Sec. Am. Comp. [35] at ¶¶ 44-49. She alleges that "Quentin Stinson would make sexually harass [sic] plaintiff about 8 times per work [sic]. In one year, Quentin

17

has sexually harassed Plaintiff about 50 times. Because of the sexual harassment, Plaintiff feared being in the department alone with Quentin. Quentin told her that he had to say stuff to her when no one else was around. Quentin told Plaintiff that it would be just his word against hers." *Id.* at ¶ 45. She further alleges that "[t]he sexual harassment Plaintiff experienced from Quentin constitute [sic] an actionable violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* at ¶ 48.

Defendant argues first that the Plaintiff's claim of sexual harassment must be dismissed because, it argues, that claim is time barred under Title VII because she failed to file a timely charge with the EEOC. Defendant argues second that, even if the Plaintiff's claim is not time barred, her sexual harassment claim should be dismissed because Plaintiff has failed to allege sufficient facts to state a plausible claim that Defendant is liable for any violation of Title VII based on the alleged harassment of Plaintiff by Stinson.

a.    Timeliness of Plaintiff's EEOC Charge

Before a plaintiff may pursue a claim of employment discrimination under Title VII, she first must exhaust her administrative remedies. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). The first administrative remedy that must be exhausted is proper filing of a charge of discrimination with the EEOC. *Id.* at 1317. In "deferral states," or those states with a state agency equivalent to the EEOC, the

charge must be filed within 300 days. *See Jones v. Dillard's Inc.*, 331 F.3d 1259, 1263 (11th Cir. 2003). In "non-deferral states," however, or states without a state equivalent to the EEOC, Title VII requires that an employee aggrieved by discriminatory acts file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e); *see Jones*, 331 F.3d at 1263. Georgia is a non-deferral state; therefore, the Plaintiff in this case was required to file her EEOC Charge within 180 days after the last alleged act of discrimination. *See Sheffield v. United Parcel Serv., Inc.*, 403 Fed. Appx. 452, 454 n.2 (11th Cir. 2010).

Pursuant to that requirement, any claim based on a discrete act of discrimination prior to the 180-day period is not actionable under Title VII. *See, e.g.*, *Turlington v. Atlanta Gas Light*, 135 F.3d 1428, 1435 (11th Cir. 1998); *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992). When a plaintiff alleges that she was subjected to unlawful discrimination as a result of a hostile work environment, however, she may state a viable claim under Title VII based on acts outside the 180-day period prior to the filing of an EEOC charge, so long as "an act contributing to the claim occurs within the filing period." *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 117 (2002).

The Supreme Court has held that Title VII prohibits a hostile work environment in which "a series of separate acts . . . collectively constitute one 'unlawful

19

employment practice.'" *Id.* "As opposed to '[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire,' a hostile work environment claim addresses acts 'different in kind' whose 'very nature involves repeated conduct,' such as 'discriminatory intimidation, ridicule, and insult.'" *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (*quoting Morgan*, 536 U.S. at 114–16) (other citations omitted). Thus, hostile environment claims "are based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115.

Thus, in *Morgan*, the Supreme Court eliminated the application of a "continuing violation" theory to employment discrimination claims based on discrete acts. As to hostile environment claims, however, the Court recognized that such claims, by "[t]heir very nature[,] involve[] repeated conduct . . . [and] cannot be said to occur on any particular day." *Morgan*, 536 U.S. at 118. In recognition of this, the Court held that hostile work environment claims can be pursued within the applicable time period that begins to run from "any act that is part of the hostile work environment." *Id.* The Court thus held that "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. The relevant inquiry

for this Court after *Morgan* is which acts alleged by Plaintiff are "repeated conduct" "contributing to the [hostile work environment] claim" and which alleged acts are discrete acts of discrimination or retaliation.

The Eleventh Circuit in *McCann* provides guidance on that issue. In *McCann*, the court held that a plaintiff's claim that she was subject to a hostile work environment could not be premised on the allegation that "complaints of discrimination were subject to retaliation and not investigated" by her employer. *McCann*, 526 F.3d at 1378-79. Instead, that type of conduct concerned a pattern of discrimination practiced against employees of a particular protected class, which constituted a discrete act that must be challenged as a separate statutory discrimination claim. *Id.* at 1379. The court reasoned that an allegation that complaints of discrimination were not investigated "cannot be brought under a hostile work environment claim that centers on 'discriminatory intimidation, ridicule, and insult.'" *Id.* at 1379 (citing *Morgan*, 536 U.S. at 116).

In this case, Plaintiff does not allege in the Second Amended Complaint the specific date on which she filed her EEOC Charge against ApolloMD. Instead, she alleges only that she "filed a claim with the EEOC within 180 days of the facts outlines [sic] below." Sec. Am. Compl. [35] at ¶ 11. Defendant, however, has produced a copy of Plaintiff's EEOC Charge, which appears to show that Plaintiff

filed it on March 26, 2012.[2] *See* Pl. EEOC Charge [28-1], attached as Ex. A to

Defendant's second Motion to Dismiss [28]. Thus, Defendant argues, because it is

undisputed that Plaintiff filed her EEOC Charge on March 26, 2012, she may only

recover for alleged acts of sexual harassment that occurred within 180 days of that

date, or acts that occurred on or after September 28, 2011. Def. Br. at 6. Defendant

argues that the Plaintiff's only allegations regarding the purported acts of

"harassment" by Stinson fall outside that time period, and thus, the Plaintiff's claim

must be dismissed because it is time barred.[3] *Id.* at 6-7. The Court disagrees.

The basis of the Defendant's argument is that the allegations of the Plaintiff's

Second Amended Complaint indicate that all of the alleged acts of harassment by

Stinson occurred in or around August of 2011, and Plaintiff does not allege that

Stinson did anything to contribute to a hostile work environment on or after

---

[2] As discussed above, the Court may consider the Plaintiff's EEOC Charge as part of the pleadings because Plaintiff specifically referenced it in the Second Amended Complaint and has not challenged its authenticity. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

[3] Although Plaintiff filed a response to the Defendant's Motion to Dismiss, she completely failed to respond to the Defendant's argument regarding the timeliness of her EEOC charge with respect to her sexual harassment claim. *See* Pl. Br. [39]. Because Plaintiff failed to respond to that argument, the Court could deem the argument to be unopposed. *See* LR 7.1B, NDGa. Nevertheless, the Court has considered the Defendant's timeliness argument and finds it unpersuasive for the reasons discussed herein.

September 28, 2011. Plaintiff's allegations, however, do not include dates or even approximate dates for the alleged incidents she describes. Thus, it is impossible to conclude from the Plaintiff's allegations, as the Defendant argues, that the Plaintiff's sexual harassment claim is time barred under Title VII.

Plaintiff alleges in the Second Amended Complaint that she was sexually harassed by a co-worker, Quentin Stinson, "*starting* in or around August of 2011." Sec. Am. Compl. [35] at ¶ 15 (emphasis added). She alleges that, on an unspecified date, Stinson said to her, "Angela, nice stripper shoes," and on an unspecified date (the same day or perhaps another, it is not clear), Stinson said to her, "Angela, today you are dressed like the office whore." *Id.* at ¶ 15. She further alleges that, on an unspecified date, Stinson called her over to his desk and showed her a photo of her house on his computer screen. *Id.* at ¶ 15. Significantly, Plaintiff does not state the date on which any of these incidents occurred. Instead, it can only be inferred that they all occurred at some time between late August of 2011, and January or February of 2012, when Plaintiff eventually complained about Stinson's alleged harassment to Thea Dillinger. *See id.* at ¶ 20. Plaintiff does not allege that Stinson continued to subject her to sexual harassment after she complained to Dillinger.

Thus, although the Plaintiff's allegations are not clear, it is entirely possible that one or more of Stinson's alleged acts of sexual harassment occurred on or after

September 28, 2011. For that reason, the Court finds that Plaintiff's sexual harassment claim cannot be dismissed on the ground that Plaintiff failed to file a timely EEOC Charge with respect to that claim.

b.      Sufficiency of Plaintiff's Allegations

Defendant argues further that, even if the Plaintiff's claim of sexual harassment is not time barred, that claim should still be dismissed because Plaintiff has failed to allege sufficient facts to state a plausible claim that Defendant is liable for any violation of Title VII based on the alleged harassment of Plaintiff by Stinson. The Court agrees, and finds that, even taking all of Plaintiff's allegations as true, she has failed to state a plausible claim under Title VII for a hostile work environment based on alleged sexual harassment.

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a violation of Title VII by showing that she was harassed on the basis of her sex and that such harassment affected a term or condition of her employment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986); *Henson v. City of Dundee*, 682 F.2d 897, 902-904 (11th Cir. 1982). As the United States Supreme Court has stated:

24

> [T]he language of Title VII is not limited to "economic" or "tangible" discrimination. The phrase "terms, conditions, or privileges of employment" evinces a congressional intent to "'strike at the entire spectrum of disparate treatment of men and women'" in employment.

*Meritor Savings Bank*, 477 U.S. at 64 (internal citations omitted). Thus, an employer is liable for a violation of Title VII based on sexual harassment when the harassing conduct "unreasonably interferes with an employee's job performance by creating a hostile, intimidating, or offensive work environment. *Id.* at 65.

In order to establish a *prima facie* case for a Title VII claim against an employer for a hostile work environment based on harassment, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex (or race or another protected class under Title VII); (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) there is a basis for holding the employer liable for the harassment either directly or indirectly. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Cross v. Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Henson*, 682 F.2d at 903-905; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

In order to meet the third element, a plaintiff must show that the work environment was "permeated with discriminatory intimidation, ridicule, and insult,

that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also Gupta v. Florida Board of Regents*, 212 F.3d 571, 584 (11th Cir. 2000). A court must consider the "totality of the circumstances" in determining whether a hostile environment is severe or pervasive enough to be actionable under Title VII; it must consider not only the frequency of the incidents alleged but also the gravity of those incidents. *Harris*, 510 U.S. at 23; *Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1511 (11th Cir. 1989). Other factors that are relevant are whether the offensive conduct is physically intimidating or humiliating, and whether it unreasonably interferes with the plaintiff's work performance. *Harris*, 510 U.S. at 23. As the Supreme Court has stated, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted).

The severe or pervasive requirement, as defined by the Supreme Court, contains both a subjective and objective component. *Miller*, 277 F.3d at 1276; *see also Harris*, 510 U.S. at 21-22. Thus, to be actionable, the alleged harassment must result in both an environment that the victim "subjectively perceive[s] . . . to be abusive" as well as an environment "that a reasonable person would find hostile or abusive." *Miller*, 277

F.3d at 1276. In evaluating whether a reasonable person would find conduct to be sufficiently severe or pervasive, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998); *see also Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (*en banc*) ("courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.").

In its Motion to Dismiss, Defendant argues that Plaintiff's claim of sexual harassment under Title VII must be dismissed because, it argues, "the conduct Plaintiff has alleged, even if subjectively unpleasant, cannot conceivably state the required level of severe and pervasive conduct." Def. Br. [36-1] at 7. Although Defendant misstates the standard for evaluating claims of a hostile work environment, which requires a plaintiff to show that the alleged harassing conduct was either severe *or* pervasive, not necessarily both, the Court nevertheless agrees with Defendant that Plaintiff's allegations in this case have not met this burden. She has failed to allege sufficient facts indicating that the alleged harassment by Stinson was either severe or

27

pervasive enough to rise to the level of a hostile work environment in violation of Title VII.

The Plaintiff's factual allegations are set forth in detail above. In sum, the Plaintiff specifies that Stinson made two separate comments to her that she contends constituted sexual harassment. She alleges that, on an unspecified date, Stinson said to her, "Angela, nice stripper shoes," and on an unspecified date, Stinson said to her, "Angela, today you are dressed like the office whore." Sec. Am. Compl. [35] at ¶ 15. She also alleges that, on an unspecified date, Stinson called her over to his desk and showed her a photo of her house on his computer screen, and said to her, "I know that is your house because that is your husband's truck." *Id.* at ¶ 15.

As an initial matter, it is not clear whether Plaintiff is even alleging that Stinson's final comment regarding the Plaintiff's house and her husband's truck should be considered part of the alleged sexual harassment. Plaintiff does not allege that this comment was a reference to her sex, however, and the Court finds that this comment did not relate to the Plaintiff's sex in any way, and thus, cannot be considered part of any claim of sexual harassment. Moreover, the Court finds that the other two comments cannot be considered sufficient to create a hostile work environment based on sex either. While the "stripper shoe" and "office whore" comments may have been related to Plaintiff's sex, the Plaintiff has not shown that the

comments were so humiliating or intimidating as to unreasonably interfere with her work environment. Significantly, Plaintiff does not allege that Stinson ever made a sexual proposition to her, or ever touched her in any sexual or threatening way. She also does not allege that Stinson made these kinds of comments to her on a daily basis, or with any regular frequency so that they may be considered pervasive, even if not severe.

Thus, the Court finds that these two comments that the Plaintiff alleges Stinson said to her, one about "stripper shoes," and one about being "dressed like the office whore"–comments which may have been made days, weeks, or even months apart–cannot remotely be considered either severe or pervasive enough to create a hostile work environment that is actionable under Title VII. *See, e.g., Murphy v. City of Aventura*, 383 Fed. Appx. 915, 918 (11th Cir. 2010) ("Although [alleged harasser's] use of terms like 'slut,' "whore,' 'bitch,' 'hooker,' and his remark about a young student's bust size were no doubt degrading and sex based, [his] nine remarks, made over the course of over three years, were neither severe nor pervasive."); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999) (*en banc*) (behavior from the alleged harasser over several months including rubbing his hip against the plaintiff's hip, two instances of sniffing while looking at her groin area,

constant following and staring at her, and telling her "I'm getting fired up," did not

constitute severe or pervasive conduct).

Although Plaintiff does not allege anywhere in the "Facts" section of her

Second Amended Complaint that Stinson made unwanted sexual comments to her on

a daily or otherwise frequent basis, in the section in which she asserts her claim of

sexual harassment, she alleges that "Quentin Stinson would make sexually harass [sic]

plaintiff about 8 times per work [sic]. In one year, Quentin has sexually harassed

Plaintiff about 50 times." Sec. Am. Comp. [35] at ¶ 45. This assertion, however, finds

no support in the Plaintiff's factual allegations. Plaintiff simply does not allege that

Stinson said anything to her of a sexual nature on a frequent basis, whether "about 8

times per work," or "about 50 times" in one year. As discussed, she alleges that he

made only two specific comments to her that could be considered of a sexual nature.

Thus, her conclusory allegation that Stinson would "sexually harass" her on a frequent

basis is a legal conclusion that is completely unsupported by her factual allegations.

As discussed, the Supreme Court has held that a court cannot accept this type

of conclusory allegation without support from specific facts showing that the plaintiff

has stated a "plausible" claim for relief, not merely a "possible" claim based on mere

legal assertions without factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancement. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."). Thus, Plaintiff's bare assertion that Stinson "harassed" her fifty times in one year is of no value without allegations of supporting facts showing that this legal conclusion is plausible.

In response to Defendant's argument that she has failed to allege sufficient facts to state a plausible claim of sexual harassment under Title VII, Plaintiff argues that "the United States Supreme Court has made it clear a Plaintiff does not need to allege a prima facie case of discrimination in a complaint." Pl. Br. [39] at 9. Plaintiff is correct that, for claims of employment discrimination based on disparate treatment, the Supreme Court has held that a plaintiff is not required to allege sufficient facts to set forth all of the elements of a *prima facie* case, or other facts relevant to the *McDonnell Douglas* burden-shifting framework, in order to defeat a motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (the *McDonnell Douglas* framework is an "evidentiary standard, not a pleading

31

requirement" and a plaintiff is not required to plead every element of a *prima facie* case to survive a motion to dismiss); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (setting forth the burden-shifting framework applicable to claims of disparate treatment).

But in this case, because Plaintiff is not asserting a typical claim of disparate treatment, but is instead asserting a claim of a hostile work environment based on sexual harassment, the *McDonnell Douglas* framework does not even apply. Furthermore, the Supreme Court in *Swierkiewicz* did not state that the elements of a *prima facie* case are not relevant to evaluating the facial sufficiency of a plaintiff's factual allegations, and courts continue to consider the elements of a *prima facie* case to evaluate the sufficiency of a complaint on a motion to dismiss.[4] *See Flores v. Select Energy Servs., LLC*, 486 Fed. App'x 429, 432 (5th Cir. 2012) ("The elements of a *prima facie* case are helpful, however, in framing what constitutes [a discrimination] claim."); *Keys v. Humana, Inc.*, No. 3:09–CV–00834–CRS, 2013 WL 5740109, at *5 (W.D. Ky. Oct. 22, 2013) ("Although Keys is correct that she does not have to plead

---

[4] At least one Circuit Court has held that the *Swierkiewicz* decision has been "repudiated" by the Supreme Court in *Twombly* and *Iqbal*. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("We have to conclude, therefore, that because *Conley* has been specifically repudiated by both *Twombly* and *Iqbal*, so too has *Swierkiewicz*, at least insofar as it concerns pleading requirements and relies on *Conley*.).

a prima facie case in order to survive dismissal, *Twombly* and *Iqbal* require that she produce sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that her work environment was both objectively and subjectively hostile due to sexually or racially-charged harassment." (internal quotes and citations omitted)).

Indeed, courts that have addressed the issue have held that a plaintiff asserting a claim of a hostile work environment under Title VII fails to state a plausible claim for relief unless the allegations of the complaint suggest either severe or pervasive conduct by the alleged harasser that would be sufficient to create an actionable hostile work environment. *See, e.g., Gayden v. Arizona Dept. of Economic Sec.*, No. CV–10–0882–PHX–LOA, 2010 WL 2836925, at *4 (D. Ariz. July 19, 2010) ("Plaintiff's Amended Complaint, however, fails to allege a plausible hostile work environment claim because she did not provide any facts to support her conclusory claim."); *Keplin v. Md. Stadium Auth.*, No. CCB–08–1697, 2008 WL 5428082, at *4-5 (D.Md. Dec. 31, 2008) (plaintiff's complaint failed to state a plausible claim of a hostile work environment under Title VII because the only facts suggesting severe or pervasive conduct were three instances of offensive conduct over seven months); *Mangum v. Town of Holly Springs*, 551 F.Supp.2d 439, 444 (E.D.N.C. 2008) (complaint failed to allege facts sufficient to show a hostile work environment because

the factual allegations showed only unprofessional and uncivilized conduct that was not severe or pervasive).

As those decisions illustrate, the appropriate standard to apply in evaluating the sufficiency of Plaintiff's allegations is the standard set forth in *Twombly* and *Iqbal*: whether the Plaintiff has alleged sufficient facts to support a *plausible* claim that the Defendant is liable under Title VII for creating a hostile work environment on the basis of sexual harassment. Because Plaintiff's factual allegations fall far short of showing that Stinson's alleged harassment amounted to severe or pervasive conduct that created a hostile work environment, the Court finds that she has failed to state a plausible claim for relief with respect to her claim of sexual harassment in Count I of the Second Amended Complaint.

In addition to the alleged comments made by Stinson, Plaintiff also alleges in the Second Amended Complaint that other employees of ApolloMD made various remarks of a sexual nature.[5] According to Plaintiff, an unidentified male intern in the department and the director would "freely discuss him getting girls at his college

---

[5] Plaintiff also alleges that, on one occasion, she was "whacked" on her "derriere" by a female manager, Kim Larson, when she was bent over getting files out of a file cabinet. Sec. Am. Compl. at ¶ 22. Plaintiff does not allege that this incident was related to her sex, however, nor does she allege that this incident constituted part of the alleged "sexual harassment." As discussed, Plaintiff bases her claim of sexual harassment solely on the alleged conduct of Stinson. *Id.* at ¶¶ 45-47.

drunk and having sex with them." Sec. Am. Compl. at ¶ 18. On one occasion, "the director and several other employees freely discussed sex with a MILF," and explained what a "MILF" was to other employees who were unfamiliar with the term. *Id.* at ¶ 18. On another occasion, other unidentified employees showed a cell-phone picture of a penis to people in the office, but Plaintiff claims that they "skipped" her because they "knew that I was not interested in seeing it." *Id.* at ¶ 18. On another occasion, the director informed other employees "that she was going home to watch a movie called The One Eyed Monster," and the following Monday, the director came back to work and "described the movie and the star of the movie which the director described as a possessed penis from another planet." *Id.* at ¶ 18.

It appears from Plaintiff's allegations that Plaintiff is basing her claim of sexual harassment entirely on Stinson's comments to her, not these other sexual remarks that she claims were made by other employees. *See id.* at ¶ 48 ("The sexual harassment Plaintiff experienced from Quentin constitute [sic] an actionable violation of Title VII"). But even if Plaintiff had attempted to argue that these alleged sexual remarks made by other employees in the workplace contributed to a sexually hostile work environment, that argument would fail because Plaintiff has failed to allege that any of these comments was directed at her personally, and further, because Plaintiff admits that the comments were made by both males and females, including an unidentified

female director. Indeed, Plaintiff admits that her workplace environment was "a free for all to discuss whatever you wanted to, whenever you wanted to, with whomever you wanted to and however you wanted to." *Id.* at ¶ 19. Because the Plaintiff has failed to allege that these comments were directed at her, or that the comments had anything to do with the Plaintiff's sex, the Court finds that they cannot be considered part of her claim of sexual harassment.

Accordingly, for all these reasons, the undersigned **RECOMMENDS** that the Defendant's Motion to Dismiss [36] be **GRANTED** with respect to Plaintiff's claim of "sexual harassment" under Title VII, and that Count I of the Second Amended Complaint be **DISMISSED**.

2.      Retaliation under Title VII

In Count II of the Second Amended Complaint, Plaintiff asserts a claim of "retaliation" under Title VII. Sec. Am. Comp. [35] at ¶¶ 50-53. She alleges that she "reported the sexual harassment to upper management," and that "[u]pper management starting harassing Plaintiff because she reported the sexual harassment." *Id.* at ¶ 51. She further alleges that "[t]he harassment Plaintiff experienced constitutes an actionable violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* at ¶ 52.

Title VII acts to shield employees from retaliation for certain protected practices. Specifically, the statute provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee or applicant] has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

In general, claims of retaliation are also evaluated under the framework of shifting evidentiary burdens established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600 (11th Cir. 1986); *see also Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993). In order to prevail, a plaintiff must first establish a *prima facie* case of retaliation. *Goldsmith*, 996 F.2d at 1162-63; *Donnellon*, 794 F.2d at 600-601; *see also Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1524 (11th Cir. 1991); *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985).

In order to state a claim for a *prima facie* case of illegal retaliation under 42 U.S.C. § 2000e-3(a), Plaintiff must show that: (1) she engaged in a protected activity or expression; (2) she received an adverse employment action, and (3) there was a

causal link between the protected expression and the adverse action. *See, e.g., Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1524 (11th Cir. 1991); *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985).

In its Motion to Dismiss, Defendant argues that Plaintiff's claim of retaliation must be dismissed because she has failed to state a plausible claim that Defendant retaliated against her in any way. Defendant argues further that Plaintiff has failed to plead sufficient facts to establish *any* of the elements of a *prima facie* case: that she engaged in a protected activity under Title VII, that she received an adverse employment action, or that there was a causal link between any alleged protected expression and the alleged adverse action. Def. Br. [36-1] at 11-12. Although the Court finds that Plaintiff has alleged sufficient facts to establish that she did complain about the alleged "sexual harassment" by Stinson, the Court agrees with Defendant that Plaintiff has failed to allege sufficient facts to establish that she was subjected to any adverse employment action by ApolloMD after she complained. Thus, the Court finds that, even taking all of Plaintiff's allegations as true, she has failed to state a plausible claim under Title VII for unlawful retaliation.

As discussed above, Plaintiff alleges in the Second Amended Complaint that she complained to both Lisa Murray and Thea Dillinger about the alleged sexual

harassment by Stinson. *See* Sec. Am. Compl. at ¶¶ 16, 20. Making informal complaints to superiors about suspected illegal discrimination may qualify as protected expression under the opposition clause of Title VII. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997); *see also Rollins v. Fla. Dep't. Of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) ("[W]e recognize that the protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like [the plaintiff], who informally voice complaints to their superiors."). Thus, the Court finds that the Plaintiff has alleged sufficient facts to state a plausible claim that she engaged in a protected activity under Title VII when she complained about Stinson to Murray and Dillinger.

The Court agrees with Defendant, however, that the Plaintiff has failed to allege sufficient facts to state a plausible claim that ApolloMD took any action against her that could remotely be considered an adverse employment action under Title VII. The Eleventh Circuit held in *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998), that, as used in the context of a claim of retaliation under Title VII, adverse employment actions are not limited strictly to ultimate employment decisions such as a termination or a failure to promote. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) ("Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions."). In

*Wideman*, the court found that a series of incidents involving reprimands and other negative treatment of an employee who had filed an EEOC charge could, when taken together, constitute adverse employment actions for the purposes of presenting a *prima facie* case of retaliation under Title VII. *Id.* Nevertheless, although actions falling short of ultimate decisions may still constitute adverse employment actions under Title VII, "there is some threshold level of substantiality that must be met for unlawful discrimination to be cognizable." *Id.*; *see also Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

The Supreme Court has held that the anti-retaliation provision of Title VII covers a broader scope of conduct than does the anti-discrimination provision. *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006) ("[W]e conclude that Title VII's substantive provision and its anti-retaliation provision are not coterminous. The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."). But the Supreme Court reiterated the requirement that the adverse action can not be merely a trivial annoyance but must be significant in order to be actionable as unlawful retaliation under Title VII.

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . In our view, a plaintiff must show that a reasonable employee would have

> found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. . . . We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace. An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.

*Id.* at 67-68 (internal quotes and citations omitted).

In this case, Plaintiff alleges that, after she complained about Stinson's conduct to Murray and Dillinger, "[u]pper management starting harassing Plaintiff because she reported the sexual harassment." Sec. Am. Compl. at ¶ 51. It is not entirely clear from the Plaintiff's allegations what conduct by "upper management" she is alleging constituted the alleged "harassment" against her. A review of the Plaintiff's factual allegations suggests three possible acts of alleged "harassment." First, Plaintiff alleges that, after she complained about Stinson to Murray, the "exchanges" between Murray and herself had "become strained," and that Murray "was short and stern when she spoke with me regarding anything and as a result I really tried to avoid interacting with her if I could." *Id.* at ¶ 23. Plaintiff does not offer any concrete examples of anything that Murray said to her that constituted any alleged "harassment," and alleges only that Murray was "short and stern."

Second, Plaintiff alleges that, after Stinson's employment had been terminated, Murray told her on March 16, 2012, that her "job was on the line," and that, in order to keep her job, Plaintiff would be moved into Stinson's former position, a financial credentialing position she had held earlier in her employment. *Id.* at ¶ 27. Murray told Plaintiff that she "was taking too long to get [her] job done," and that her change in position would be effective on Monday, March 19, 2012. *Id.* at ¶ 27. Plaintiff does not allege that this change in position was a demotion, nor does she allege that she was ever actually required to take that position. Instead, Plaintiff admits that she did not report to work on March 19 or 20, 2012, and that she voluntarily resigned her employment with ApolloMD on March 21, 2012, after she accepted a position with another employer. *Id.* at ¶¶ 28-32.

Third, Plaintiff also alleges that, after she complained to Dillinger about Stinson, she was "whacked" on her "derriere" by a female manager, Kim Larson, when she was bent over getting files out of a file cabinet. *Id.* at ¶ 22. When Plaintiff asked Larson, "did she just whack me on my butt," Larson replied "yes," and said, "it was so big and it was right there in my face, I had to do it." *Id.* at ¶ 22. Plaintiff told Larson, "Kim, that is not acceptable," and Larson responded by laughing and saying "what are you going to do, run to HR." *Id.* at ¶ 22. Plaintiff claims that she "felt violated and humiliated and [she] felt helpless." *Id.* at ¶ 22. Plaintiff does not allege,

however, that Larson had any intent to retaliate against her for complaining about Stinson, and it is not even clear whether Plaintiff is alleging that this incident with Larson constitutes part of her claim of retaliation. In any event, the Court finds that these three allegations, whether considered separately or together as a pattern of "harassment," do not constitute an adverse employment action under Title VII for the purpose of Plaintiff's claim of unlawful retaliation.

As the Supreme Court has emphasized, Title VII "does not set forth a general civility code for the American workplace." *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. 53 at 68. A claim of retaliation under Title VII cannot be based on conduct that amounts to "petty slights, minor annoyances, and simple lack of good manners," because "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* The Court finds that the Plaintiff's allegations in this case do not establish anything more than the "petty slights" and "simple lack of good manners" that the Supreme Court has held are not sufficient to sustain a claim of unlawful retaliation.

Thus, the Court finds that the Plaintiff has failed to state a plausible claim for unlawful retaliation under Title VII. Accordingly, the undersigned **RECOMMENDS** that the Defendant's Motion to Dismiss [36] be **GRANTED** with respect to Plaintiff's

claim of retaliation under Title VII, and that Count II of the Second Amended Complaint be **DISMISSED**.

3.     Constructive Discharge

Plaintiff's last count, asserted in Count III of the Second Amended Complaint, is a claim of "constructive discharge." Sec. Am. Comp. [35] at ¶¶ 54-56. Plaintiff alleges that "[n]o reasonable person in Plaintiff's position could take the harassment. Plaintiff left the company because of harassment. Defendant is liable for constructive discharge." *Id.* at ¶ 55.

In general, to establish a claim of constructive discharge, a plaintiff must show that her "working conditions were so intolerable that a reasonable person in [her] position would be compelled to resign." *Kilgore v. Thompson & Brock Mgmt.*, 93 F.3d 752, 754 (11th Cir. 1996) (*quoting Steele v. Offshore Shipbuilding, Inc.*, 867 F. 2d 1311, 1317 (11th Cir. 1989)). There must be a "high degree of deterioration in an employee's working conditions, approaching the level of intolerable." *Hill v. Winn-Dixie*, 934 F.2d 1518, 1527 (11th Cir. 1991). In general, the threshold that a plaintiff must establish for a constructive discharge claim is higher than that for a hostile work environment claim. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001), *modified on other grounds, Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007). A plaintiff claiming constructive discharge must show "a greater

severity or pervasiveness of harassment" such that resignation is the only reasonable response. *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009).

Furthermore, unlike a claim of a hostile work environment, in which a court must consider the plaintiff's subjective feelings in addition to the objective reasonableness of the alleged conduct, a claim of constructive discharge claim involves only an objective standard. *See Hipp*, 252 F.3d at 1231. To sustain a constructive discharge claim, a plaintiff must allege sufficient facts to establish that her employer imposed working conditions so egregious and unbearable that no reasonable person in her position would be able to tolerate the conditions. *See Fitz v. Pugmire Lincoln–Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003); *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1433-34 (11th Cir. 1997). In addition, a claim of constructive discharge is difficult to establish if the supposedly "intolerable" conditions lasted only for a short time. *Hill*, 934 F.2d at 1527.

In this case, the Court finds that Plaintiff has failed to allege sufficient facts to state a plausible claim for constructive discharge. She has not alleged any facts that would establish that she was compelled to resign by "intolerable" conditions at ApolloMD. As discussed above in connection with Plaintiff's claims of sexual harassment and retaliation, her factual allegations indicate that Stinson made two comments of a sexual nature to her, that Murray was "short and stern" with her, and

that Larson, on one occasion, "whacked" her on her "derriere." The Court finds that these allegations do not rise to the level of egregious and intolerable conduct that would be sufficient to state a plausible claim for constructive discharge, as a matter of law. *See McWhorter v. Kindercare  Learning Centers, LLC*, Civil Action No. 1:11–CV–04447–TWT–GGB, 2012 WL 2513502, at *5 (N.D. Ga. May 31, 2012) (Brill, M.J.), *report and recommendation adopted*, 2012 WL 2504010 (N.D.Ga. Jun 27, 2012) (Thrash, J.) (plaintiff failed to state a claim of constructive discharge based on alleged conduct that occurred over an eight-day period, including the defendant's refusal to train her or allow requested breaks, a supervisor's comments to her telling her not to tell anyone she was pregnant and that she would be harassed if she did, that she would be fired due to her pregnancy, and that she would be an "unreliable" and "unvalued" employee due to her pregnancy).

Thus, the Court finds that the Plaintiff has failed to state a plausible claim for constructive discharge. Accordingly, the undersigned **RECOMMENDS** that the Defendant's Motion to Dismiss [36] be **GRANTED** with respect to Plaintiff's claim of constructive discharge, and that Count III of the Second Amended Complaint be **DISMISSED**.

46

E.     *Plaintiff's Right to Amend*

Typically, "when it appears that a more carefully drafted complaint might state a claim upon which relief can be granted," the Court would direct a plaintiff to re-plead her allegations before ordering that an action be dismissed for failure to state a claim. *See Danow v. Borack*, 197 Fed. App'x 853, 856 (11th Cir. 2006). In this case, however, the Plaintiff has already amended the complaint twice, the first time when she was still proceeding *pro se*, and then a second time through counsel.

First, Plaintiff amended her complaint "as a matter of right" under Rule 15 when she filed an Amended Complaint [10] on January 31, 2014. *See* Order [8] dated January 15, 2014, at 2; FED. R. CIV. P. 15(a)(1). Thereafter, Defendant filed a Motion to Dismiss [28] that Amended Complaint on the ground that Plaintiff had failed to state a plausible claim for relief, and the undersigned agreed. In the November 24 Order, the undersigned found that "Plaintiff's scant one-page Amended Complaint [10] fails to state a claim for relief under Title VII." *See* November 24 Order [34] at 12. The undersigned noted that, although the Plaintiff was proceeding *pro se* at the time she filed the Amended Complaint [10], she had since obtained counsel. *See id.* at 13-15. For that reason, the undersigned found that the interests of justice required that Plaintiff be permitted to amend the complaint again, and ordered

47

Plaintiff to amend the complaint a second time. *Id.* at 15. Thereafter, Plaintiff filed her Second Amended Complaint [35] on December 16, 2014.

Thus, Plaintiff has now been afforded two opportunities to amend her complaint, and she has still failed to state a plausible claim for relief under any of the legal theories presented. Under these circumstances, the Court finds that the interests of justice do not require that the Court allow the Plaintiff to amend her complaint for a third time, in the hope that she might be able to include sufficient factual allegations to state a plausible claim for relief.

## III.   RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss [36] be **GRANTED**, and that all of Plaintiff's claims be **DISMISSED** for failure to state a claim for relief.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 28th day of April, 2015.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

48